IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RAUL EDGARDO MALDONADO LOPEZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    1:26-cv-496 (LMB/LRV) |
| | ) |
| PAUL PERRY, et al., | ) |
| | ) |
| Respondents. | ) |

## ORDER

Petitioner Raul Edgardo Maldonado Lopez ("Lopez"), a native and citizen of El Salvador, has filed a four-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since February 6, 2025. Specifically, he alleges that his characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(2), violates the Immigration and Nationality Act (Count I), the bond regulations (Count II), and his substantive and procedural due process rights (Counts III and IV, respectively).

Lopez is currently detained at the Caroline Detention Facility, which is within this Court's jurisdiction and the basis upon which he is suing Paul Perry, the warden of the Caroline Detention Facility. Lopez has also sued Russell Hott, the Field Office Director of the ICE Enforcement and Removal Operations Washington Field Office; Kristi Noem, the DHS Secretary; and Pamela Bondi, the Attorney General (collectively, "the federal respondents"). For the reasons discussed in this Order, the Court finds that Lopez is detained pursuant to 8 U.S.C.

§ 1226(a). Accordingly, his Petition will be granted as to Count IV, and the federal respondents will be ordered to release him from custody and provide him with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a).[1]

I.

According to his Petition, Lopez entered the United States in 2007, when he was 12 years old. [Dkt. No. 1] at ¶ 1. When he entered the United States, he did not encounter Customs and Border Protection. Id. Lopez has lived in the United States since 2007 and has developed extensive times to this country. Id. On February 6, 2025, Lopez was shopping at an auto parts store in Norfolk, Virginia, and when he left the business, ICE agents arrested and detained him. Id. ¶ 2. He was then transferred to the Caroline Detention Facility. Id. Lopez "has never been charged with, or convicted of, a crime that would render him statutorily ineligible for any relief under the [Immigration and Nationality Act] or a danger to the community." Id. ¶ 25.

Lopez filed his Petition for Writ of Habeas Corpus on February 19, 2026. [Dkt. No. 1]. This Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to "file either a Notice indicating that the factual and legal issues presented in this Petition do not differ in any material fashion from those presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818 (E.D. Va.), or an Opposition to the Petition discussing the material differences between Ceba Cinta and this Petition." [Dkt. No. 2] at 1. In response, the federal respondents filed a Notice stating that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in Ceba Cinta" and requesting that this Court

---

[1] Because the Court is granting relief on due process grounds, it need not address Lopez's arguments based on the Immigration and Nationality Act or the bond regulations.

2

"incorporate the filings in <u>Ceba Cinta</u> into the record of this habeas case." [Dkt. No. 4].

Finding that oral argument will not aid the decisional process, the Petition will be resolved on the papers submitted.

II.

The central question posed in Lopez's Petition is whether he is subject to mandatory detention under § 1225(b)(2) or instead subject to discretionary detention and entitled to a bond hearing under § 1226(a). As the federal respondents argued in their <u>Ceba Cinta</u> opposition—which has been incorporated into the record in this civil action—whether an individual is detained under § 1225(b) or § 1226(a) lies in the "distinction between aliens who are detained after a lawful admission into the U.S. and those who are present without a lawful admission." <u>Ceba Cinta v. Noem, et al.</u>, 1:25-cv-1818, Dkt. No. 9 (E.D. Va. Oct. 28, 2025). According to the federal respondents, anyone in the United States who has not been admitted is subject to mandatory detention under § 1225(b), and § 1226(a) applies only to those who have been given legal status and subsequently placed into removal proceedings. <u>Id.</u> Therefore, they argue that because Lopez has not been admitted "as a legal matter" into the United States, he is inadmissible under 8 U.S.C. § 1182(a), considered to be an applicant for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2). <u>Id.</u>

This argument reflects DHS's novel interpretation of decades-old immigration detention statutes which, as numerous district courts throughout the country have found,[2] is contrary to

---

[2] <u>See</u> <u>Demirel v. Fed. Det. Ctr. Phila.</u>, 2025 WL 3218243, at *4–5 (E.D. Pa. Nov. 18, 2025) (noting that "of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here"). Although the Court is aware of the Fifth Circuit's decision reaching a contrary conclusion, <u>Buenrostro-Mendez v. Bondi</u>, 2026 WL 323330 (5th Cir. Feb. 6, 2026), that decision is not binding here, <u>see</u> <u>CASA de Md., Inc. v. Trump</u>, 971 F.3d 220, 260 (4th Cir. 2020). Moreover, the Court is unpersuaded by the Fifth Circuit majority's rationale for many of the reasons cogently set forth in Judge

3

DHS's implementing regulations and published guidance, the decisions of its immigration judges (until recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction. See Romero v. Hyde, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025). This new approach will also subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have an extremely limited (if any) application." Lopez Benitez v. Francis, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025). The Court has previously addressed several of these points in Hasan v. Crawford, 800 F. Supp. 3d 641 (E.D. Va. 2025), and adopts the findings and conclusions in Hasan into this Order.

Lopez has been present in the United States since 2007. [Dkt. No. 1] at ¶ 1. Because § 1226(a) sets forth "the default rule" for detaining and removing noncitizens "already present in the United States," Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), Lopez's detention is governed by § 1226(a). See Abreu v. Crawford, 2025 WL 51475, at *3 (E.D. Va. Jan. 8, 2025) ("There is a statutory distinction between noncitizens who are detained upon arrival into the United States and those who are detained after they have already entered the country, legally or otherwise."). And under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before an Immigration Judge, in which an Immigration Judge must determine whether he poses a danger to the community, and whether he is a flight risk. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). Unless an Immigration Judge makes such a determination, Lopez's continued detention is unlawful.

---

Douglas's dissent, which explains that the majority's interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent.

4

III.

For all these reasons, Lopez's Petition, [Dkt. No. 1], is GRANTED, and it is hereby

ORDERED that Lopez be promptly released from custody, with all his personal property, pending his bond hearing before an Immigration Judge. Lopez must live at a fixed address which he must provide to the federal respondents[3]; and it is further

ORDERED that respondents provide Lopez with a standard bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within 14 days of the date of this Order; and it is further

ORDERED that respondents be and are ENJOINED from denying bond to Lopez on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2); and it is further

ORDERED that, if Lopez is granted bond, respondents be and are ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2)[4]; and it is further

ORDERED that respondents file a status report with this Court within 3 days of the bond hearing, stating whether Lopez has been granted bond, and, if his request for bond was denied, the reasons for that denial.

The Clerk is directed to enter judgment in Lopez's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 23rd day of February, 2026.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

---

[3] If petitioner opts to file a pleading in this civil action notifying the federal respondents of his fixed address, petitioner should file that pleading under seal.

[4] This Court has previously found that "the automatic stay imposed in immigration cases constitutes an unequivocal violation of due process." Hasan, 800 F. Supp. 3d at 661.